**Tom SNYDER, Plaintiff,**

v.

**MURRAY CITY CORPORATION, a Municipal Corporation, and H. Craig Hall, City Attorney for Murray City Corporation, Defendants.**

No. 94–CV–667 G.

United States District Court,
D. Utah,
Central Division.

Nov. 2, 1995.

**1456**

Brian Barnard, John Pace and Joro Walker, Salt Lake City, UT, for plaintiff.

Allan L. Larson and Richard A. Van Wagoner, Salt Lake City, UT, for defendant.

### MEMORANDUM DECISION AND ORDER DENYING PLAINTIFF'S MOTION FOR NEW TRIAL AND FOR RECONSIDERATION OF JUDGMENT

J. THOMAS GREENE, District Judge.

This matter is before the court on Plaintiff Tom Snyder's Motion for New Trial and

Motion to Amend Findings and Judgment. Defendants have responded to the motions, and plaintiff has filed a reply.[1] This court determines that oral arguments would be of no material assistance, and will decide the pending motions on the basis of the existing record and the recently filed memorandums.

After due consideration, the court denies plaintiff's motion for reconsideration and for new trial, and grants in part the motion to amend by entering the following additional findings of fact and conclusions of law:

*Findings of Fact*

1. Reference to the State of Utah as intervenor in this action is deleted and the United States is substituted therefor at p. 8, n. 12 of the court's Memorandum Decision and Order dated September 12, 1995. The reference obviously was intended to be the United States rather than the State of Utah.

2. Plaintiff observes that the court addressed plaintiff's claims as though at least in part plaintiff was seeking money damages. Plaintiff's counsel corrects the court by stating that "plaintiff sought no monetary damages under his state law claims," and the court so finds. Accordingly, the court will not further discuss the arguments set forth by plaintiff (Pl.'s Reply Mem. at 4–10) concerning issues of money damages for violation of state constitutional rights and how the Supreme Court of Utah might address such matters in a proper case.

3. All other findings of fact as set forth in the Memorandum Decision and Order dated September 12, 1995, are reaffirmed.

*Conclusions of Law*

Although most certainly it is here recognized that the Supreme Court of Utah is the final arbiter of state constitutional matters, this court entered its prior Memorandum Decision and Order relative to state law claims only because plaintiff included them for ruling by this court under federal supplemental jurisdiction. In addition to the rulings concerning state constitutional issues entered by this court, and in further support

---

1. In addition, plaintiff has filed a document entitled "Exhibit Re: Prayers of Episcopal Church."

thereof, this court opines that the Supreme Court of Utah would rule against plaintiff on the merits of the state constitutional claims presented and now sets forth the following conclusions of law:

■ 1. Murray City's prayer policy is not violative of the due process provision of the Utah Constitution.

The due process provisions of the Utah Constitution and the United States Constitution are similarly worded. In this regard, the Fifth and Fourteenth Amendments to the United States Constitution guarantee that the government shall not "deprive any person of life, liberty, or property, without due process of law ...;" and article I, section 7 of the Utah Constitution states that "No person shall be deprived of life, liberty, or property, without due process of law." In the several cases in which the Utah Supreme Court has discussed the interpretation of the Utah due process provisions, federal case law has been relied upon. *See Terra Utilities, Inc. v. Public Serv. Comm'n*, 575 P.2d 1029, 1033 (Utah 1978) (holding that decisions of the United States Supreme Court regarding the due process guarantees of the United States Constitution "are highly persuasive as to the application of that [due process] clause of our state Constitution").

It therefore appears to the court that Murray City's refusal to permit plaintiff to deliver his "prayer" at the reverence portion of the City Council meetings is not violative of the due process clause of the Utah Constitution for the same reasons that this court has determined no violation to have occurred as to the federal due process clause.

■ 2. Murray City's prayer policy does not violate the "no public money or property"

provision of article I, section 4, nor does it violate the provision prohibiting "any church [to] dominate the State or interfere with its functions."

For purposes of this discussion, this court will assume without deciding that the informal policy of Murray City concerning prayer before the City Council is tantamount to the formal policy of Salt Lake City discussed by the Supreme Court of Utah in *Society of Separationists v. Whitehead*, 870 P.2d 916 (Utah 1993). As with Salt Lake City's prayer policy, the Murray City policy does not violate the "no public money or property" provision of article I, section 4 because the subsidy of religion is only indirect, nor does it violate the provision prohibiting "any church [to] dominate the State or interfere with its functions" because the prayer policy does not allow any one religious denomination to dominate or directly interfere with city business. *Id.* at 937–38, 939.

■ 3. Murray City's prayer policy as applied in this case does not violate the remaining religion clauses[2] of the Utah Constitution because such policy as applied is neutral and non-discriminatory and does not constitute a preference of one group or religion over another.

In the case at bar, plaintiff presents an argument that is markedly different from the arguments presented in *Whitehead*. That case concerned a direct challenge to the policy of conducting prayers at the beginning of City Council meetings. By way of contrast, plaintiff does not challenge the Murray City policy of permitting prayer. Instead, plaintiff asserts that once prayer is permitted in City Council meetings, the provisions of article I, section 4 require that the forum for

---

**2.** The religion and conscience clauses of the Utah Constitution are found in article I, section 4, which provides:

The rights of conscience shall never be infringed.

The State shall make no law respecting an establishment of religion or prohibiting the free exercise thereof; no religious test shall be required as a qualification for any office of public trust or for any vote at any election; nor shall any person be incompetent as a witness or juror on account of religious belief or the absence thereof.

There shall be no union of Church and State, nor shall any church dominate the State or interfere with its functions.

No public money or property shall be appropriated for or applied to any religious worship, exercise or instruction, or for the support of any ecclesiastical establishment.

No property qualification shall be required of any person to vote, or hold office, except as provided in this Constitution.

prayer be open and available to any person or group for any type of purported religious message. In this regard, plaintiff contends that his rights under article I, section 4 were violated when he was denied the opportunity to deliver his "prayer" at the reverence portion of a Murray City Council meeting.[3] In support of this argument, plaintiff cites portions of *Whitehead* which stress the paramount importance of neutrality in interpreting application of the Utah Constitution's religion clauses, such as:

> [I]f government allows all groups to apply for [a] benefit but then discriminates in the selection process, it would be preferring one group over the other in violation of the constitutional principle of neutrality.

*Id.* at 938. In *Whitehead,* the Court found that "the record indicates no preference by the City Council for any religious group or for organized religion in general." *Id.* at 939.

This court determines that Murray City's prayer policy as applied in rejecting plaintiff's request for permission to deliver his "prayer" in the reverence portion of the City Council meeting is consistent with the aforesaid interpretation of neutrality toward religion.

■ 4. Plaintiff's proposed "prayer" is not entitled to protection under the religion clauses of the Utah Constitution.

Not every statement that recites the name of a deity or is structured grammatically and semantically in a manner commonly associated with Judeo–Christian prayers automatically qualifies as a religious expression. Plaintiff's "prayer" is a political statement about the propriety of public prayer set in the framework and language of a prayer, and is akin to a parody.

The Supreme Court of Utah has stated that

> [The religion clauses in the Utah Constitution] are designed to protect *religious* exercise and freedom of conscience in gener-

al, to separate government from active financial support of religion, to prevent one religion from dominating the public schools or the government itself, and to prevent the imposition of civil limitations based on one's *religious* beliefs or lack thereof.

*Id.* at 935 (emphasis added). This court opines and holds that a non-religious activity or viewpoint does not gain protection under the religion clauses of the Utah Constitution simply by being masked in the language of religion. This conclusion is consonant with the extensive historical analysis and philosophical discussion concerning article I, section 4 set forth by the Utah Supreme Court in *Whitehead.* In this regard, this court found in its September 12, 1995, Order that "[p]laintiff admittedly is unsure of his religious beliefs, does not adhere to any particular church or group, does not profess any single faith, and has no definitive structure of religious views." *Snyder v. Murray City Corp.,* 902 F.Supp. 1444, 1449, n. 8 (D.Utah 1995). Further, plaintiff has stated: "I don't like public prayer. I don't think it is proper. I disagree with the Utah Supreme Court. . . ." Pl.'s Depo. at 84. Plaintiff voluntarily submitted the text of his "prayer" for review, which was properly determined to be in the nature of a political statement, which plaintiff was allowed to make in the "citizen comment" portion of the City Council meeting.

This court opines that plaintiff's "prayer" is not a religious exercise or activity that is entitled to protection under the religion clauses of article I, section 4 of the Utah Constitution.

For the foregoing reasons, including the additional findings and conclusions set forth herein, plaintiff's motion for new trial and to amend judgment is hereby DENIED.

Counsel for defendants is directed to lodge with the court a form of judgment consistent with this and the court's September 12, 1995,

---

3. In *Whitehead,* 870 P.2d at 935, the Supreme Court of Utah noted that certain provisions of article I, section 4 "are unique to Utah," but that other provisions at issue in this case "were drawn directly from" the United States Constitution. Despite the similar language, the Court

stated that Utah's unique history may effect a "divergent approach" in the interpretation of the Utah Constitution, resulting in "different meanings and different nuances" than the interpretation of the United States Constitution.

Order, after first complying with local rule D.Ut. 206.